William Hogg et al., Individually and as Executors of Agnes Hogg, Deceased, Respondents, *v.* Eliza R. Rose et al., Defendants, and George T. Hogg, Appellant.

1. Sale of Real Estate, Held by Trustees for Benefit of Grantor and His Wife, for Payment of Claims Thereon — Apportionment of Mortgage Covering Two Parcels Thereof. Where, in an action brought by trustees, holding real estate in trust for the benefit of their grantor and his wife, both of whom are now dead, leaving as their

heirs their children, who are devisees under the will of the wife, for an adjudication of the claims of such trustees for advances made by them under and in pursuance of the trust, and for a decree directing the sale of the lands formerly owned by the husband and his wife, and the payment of such claims from the proceeds of the husband's lands, it appears that a certain mortgage, covering part of the land of the husband and all of the land of the wife, was made by them at the time of the execution of the trust deed, and that part of the proceeds thereof was used to pay a prior mortgage upon the land of the wife and the remainder was turned over to the trustees to be applied upon the debts of the husband, an adjudication that all of the lands be sold and that the part of the later mortgage applied upon the old mortgage should be charged upon the land formerly of the wife, and that the part applied upon the debts of the husband should be charged upon the land formerly owned by him, is correct; while no act or agreement of the mortgagors, or their successors in interest, could change or impair the lien of the mortgage upon the lands covered by it, yet, as between the parties to the action, the mortgage should be apportioned in the proportion in which the proceeds thereof were received and appropriated by the husband and wife, so that the land formerly owned by the wife is primarily liable for the amount applied in satisfaction of the old mortgage thereon, and the land formerly owned by the husband is primarily liable for the amount applied on the payment of his debts.

2. Judicial Sale of Land Consisting of Several Parcels, as an Entirety — Proceeds of Sale Should Be Apportioned According to Relative Value of the Parcels. A provision, in the judgment rendered in such action, directing that the proceeds of the sale, if the land should be sold as an entirety, should be apportioned between the different parcels thereof according to their respective acreage, is arbitrary and erroneous where there is no finding as to the value of the land or that the value is in proportion to its acreage, since without such finding there can be no presumption to that effect; the judgment should be modified (the sale having been made) so as to direct that a reference be had to ascertain and determine the relative value of the parcels, and that, upon the confirmation of the referee's report, the proceeds of the sale be apportioned in accordance with the relative value of the parcels.

*Hogg* v. *Rose*, 93 App. Div. 607, modified.

(Argued October 23, 1905; decided November 21, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department entered March 29, 1904, affirming a judgment entered upon the report of a referee in an action for an accounting and for the

judicial determination of certain questions arising upon an application for the sale of certain real property.

The facts, so far as material, are stated in the opinion.

*George T. Hogg* and *Ansley Wilcox* for appellant. The referee had no power, without consent, to direct a sale of appellant's parcels with respondents' parcel *en masse* and a distribution of the avails per acreage. (Code Civ. Pro. § 1678; *Doty* v. *Trustees of Berea College,* 15 S. W. Rep. 1063; *Skaggs* v. *Kincaid,* 48 Ill. App. 608; *Ebling* v. *Dreyer,* 79 Hun, 319; 149 N. Y. 460.) Appellant did not consent to a sale of the lower farm *en masse* if the avails were to be credited to the separate parcels per acreage. (*Acer* v. *Hotch-kiss,* 97 N. Y. 395.) Appellant was not estopped by the prayer of his answer from demanding a sale in parcels, or any other judgment to which he was entitled. (Code Civ. Pro. § 1204; *Murtha* v. *Curley,* 90 N. Y. 372; *Valentine* v. *Richardt,* 126 N. Y. 272; Story's Eq. Pl. [10th ed.] §§ 40, 41.) The finding that it was to the interest of all concerned that the three parcels of both farms be offered *en masse* before striking off any parcel, is a mere conclusion and assumes that the owners of each parcel are to be insured the advantages of a separate sale and a proportionate share of any increased value of the three parcels *en masse.* (*Kahn* v. *Smelting Co.,* 102 U. S. 641; *Rumsey* v. *Briggs,* 139 N. Y. 323; *Bennett* v. *Buchan,* 76 N. Y. 386.) The judgment should have credited the avails of a sale *en masse* to each parcel in the proportion that the amount bid on each separately bore to the aggregate amount bid on the separate parcels. (*Roberts* v. *N. Y. E. R. R. Co.,* 128 N. Y. 455; *Ackerman* v. *Rubens,* 167 N. Y. 405; *Westcott* v. *F. & D. Co.,* 87 App. Div. 497; *Ebling* v. *Dreyer,* 79 Hun, 319.) The referee had no jurisdiction to divide the $2,800 mortgage as against appellant as mortgagee. (*Israel* v. *M. R. Co.,* 158 N. Y. 624; *Parsons* v. *Parker,* 159 N. Y. 16.) Parcel 1 of the lower farm was conveyed subject to the $2,800 mortgage; the respondents' lien or interest attached only to the equity of redemption, and said parcel

became primarily liable for the mortgage and the whole thereof. (Code Civ. Pro. § 522; 1 R. S. 756, § 3; *Matthews* v. *Sheehan*, 69 N. Y. 585; *Mooney* v. *Byrne*, 163 N. Y. 86; *Murray* v. *Marshall*, 94 N. Y. 611; *Freeman* v. *Auld*, 44 N. Y. 50; *Gottschalk* v. *Jungmann*, 78 App. Div. 171; *Howard* v. *Robbins*, 170 N. Y. 498; *Hull* v. *Carnley*, 11 N. Y. 501; *Miles* v. *Fralich*, 11 Hun, 561; *Bradley* v. *George*, 2 Allen, 392; *Bernhardt* v. *Lymburner*, 85 N. Y. 172.)

*W. W. Waring* for respondents. The appellant consented to the sale of the lower farm as a whole, and cannot now complain because the judgment directed it to be sold in that manner. (*Hunter* v. *M. R. Co.*, 141 N. Y. 281; *Hauver* v. *Bell*, 141 N. Y. 140; *Quinlan* v. *Welch*, 141 N. Y. 158.) The direction contained in the referee's report and judgment, that the proceeds of the sale of the lower farm be credited to each parcel proportionately to the number of acres in each parcel for the purpose of distribution, is equitable and just and is amply supported by the findings of fact. (*Cornell* v. *McCann*, 48 Md. 592.) The division of the $2,800 mortgage was equitable and just. (*Gans* v. *Thieme*, 93 N. Y. 225; *Wood* v. *Harper*, 9 App. Div. 229; *Miles* v. *Fralich*, 11 Hun, 561.)

Cullen, Ch. J. From the record before us it appears that in 1890 Wilson Hogg and his wife, Agnes Hogg, were each the owners of certain lands in Cattaraugus county. The lands owned by Wilson comprised what was known as the "upper farm" and another tract which was used and cultivated with the lands owned by Agnes as a single farm called the "lower farm." On the lands of Agnes there was a mortgage for the sum of $1,400. At that time Wilson Hogg, being financially embarrassed, conveyed by quitclaim deed to the plaintiffs all the lands owned by him under a trust or agreement the details of which it is unnecessary to recite further than to say that in substance the grantees were to advance moneys to discharge

Wilson Hogg's debts and to pay certain annuities to Wilson during his life and to his wife, if she survived him, and that for such advances and payments the lands were to stand as security. In 1895 Wilson Hogg died devising all his property to his wife Agnes. In 1902 Agnes died, leaving a will by which she devised all her property, which included both the farms, to her children, the defendants in this action. Thereafter the plaintiffs instituted this action praying that the amount due to them for their advances should be ascertained and the lands conveyed to them by Wilson Hogg should be sold and out of the proceeds of the sale the plaintiffs should be paid the amount found due. At the time of the conveyance to the plaintiffs, Wilson and Agnes Hogg had arranged with the Buffalo Savings Bank to obtain a loan on the "lower farm" of $2,800, the existing mortgage on Agnes' land to be paid out of the loan so that the new mortgage might be a first lien on the farm. The mortgage to the Buffalo bank had been executed and recorded but the money not yet advanced by the mortgagee. The agreement between Wilson Hogg and the plaintiffs provided that out of the money to be received from the Buffalo Savings Bank there should be paid the mortgage on the lands of Agnes and that the surplus should be applied on Wilson Hogg's debts. Subsequently this agreement was carried out and $1,456 paid to satisfy the Agnes Hogg mortgage. The plaintiffs asked as further relief that the amount due on the savings bank mortgage be apportioned between the two tracts of land. The appellant answered alleging that the lands embraced in the lower farm had always been used as a single farm, and that a separate sale of that part of the farm owned by Wilson Hogg in his lifetime would greatly prejudice the interest of the parties to the action. He prayed as relief that the farm be sold as an entirety and the proceeds of the sale apportioned between the parties. The action was tried and proceeded to a judgment which, having determined the amount due the plaintiffs, directed a sale of both farms. There is no dispute as to the amount due the plaintiffs, and complaint is made of

the judgment rendered only in two particulars, which we will now consider.

The decree charged on Agnes Hogg's separate lands that portion of the mortgage to the savings bank which had been applied to the satisfaction of the prior mortgage on those lands. The remainder was charged on the lands conveyed by Wilson to the plaintiffs. The appellant contends that the whole mortgage should have been charged on the lands of Wilson Hogg under the general rule in equity that where several pieces of property are subject to a single and common lien, and are conveyed to different persons, such parcels are liable for the satisfaction of the lien in the inverse order of their alienation. That rule, however, has no application to a case like the present, where the separate parcels of the mortgaged premises are owned by different persons. (*Commissioners* v. *Woodward*, 40 N. J. Eq. 23.) Indeed, the rule is not of universal application even where the grantor owns the whole premises. Which piece of property should be sold first to satisfy the lien of a mortgage depends entirely on the agreement of the parties at the time of the conveyance. If a grantor conveys a portion of the premises with warranty, or receives the whole purchase money, then the lands conveyed are not to be sold until after the lands retained by the grantor have been first applied in satisfaction of the mortgage. So, on the other hand, the grantor may by his conveyance charge the whole or any portion of the mortgage debt primarily on the lands conveyed. In the present case Wilson Hogg, by his conveyance to the plaintiffs, did not charge or assume to charge any part of the mortgage debt on the lands conveyed by him. Those lands were subject to the mortgage of the savings bank, and necessarily so, because no acts of the owners of the equity of redemption could discharge or impair the mortgagee's lien on any of the mortgaged premises, but between the plaintiffs and Agnes Hogg or her devisees the lands were subject to the lien of the mortgage to the same extent and in the same proportion as they would have been in the hands of Wilson Hogg and said Agnes. In the hands of those parties their

respective lands were liable in the proportions in which the loan had been received by the parties or appropriated to their use. The trial court, therefore, properly held that the lands of Agnes were primarily liable for the amount applied in satisfaction of the old mortgage thereon.

During the pendency of this action the appellant acquired the mortgage of the Buffalo Savings Bank. He contends that the trial court could not, as against the mortgagee, apportion the lien of the mortgage between the two parcels of land. Doubtless, in this position he is correct, for a mortgage of a thousand dollars on two pieces of land cannot by any action on the part of the owner of the equity of redemption be transmuted into two mortgages for the sum of five hundred dollars each on the separate parcels. But we do not understand the decree as having any such effect. The Buffalo Savings Bank, the original mortgagee, was not a party to the action and the plaintiffs did not seek any relief against it, but asked solely for an adjustment of the primary liabilities of the owners of the equity of redemption as between themselves. In our opinion this is all the decree effects. The question, however, is now of no importance, for the "lower farm" was sold as an entirety and the appellant's mortgage has been acquired by one of the plaintiffs.

The second objection is to the apportionment which the judgment directed to be made of the proceeds of the sale of the lower farm in case it was sold as a whole. This objection is well founded. The judgment directed that the farm be first offered for sale in two parcels, 1, that previously owned by Wilson Hogg; 2, that previously owned by Agnes Hogg, and that then it be offered for sale as an entirety, and that whichever manner of sale produced the largest offer for the whole tract should be accepted and stand. The judgment then directed that in case the farm was sold as an entirety the proceeds of sale should be apportioned between the two parcels according to their acreage which is specified in the decree. Of course, the plaintiffs had no right to a sale of the lands of Agnes, no matter how desirable it might

have been to have the lands on which they held a lien sold in connection with hers. But they did not ask for any such sale; that was directed at the request of the appellant made in his answer. Therefore he cannot now complain that the lands of Agnes were sold in an action brought solely to foreclose a lien on the lands of Wilson. But as to the provision for the apportionment of the proceeds of the sale he is in no way concluded. The direction made by the court that the apportionment should be made according to area seems to us entirely arbitrary. There is no finding as to the value of the land or that the value was in proportion to its acreage, and there is no presumption to that effect. On the contrary, such a presumption seems to us violent and unnatural. Even if the mere land was of uniform value for agricultural purposes, it would seem that the parcel which had the house and farm buildings upon it would be more valuable than the other. It also appears that the part which belonged to Wilson Hogg is back land cut off from the highway. This fact would or, at least, might affect its value. We need not, however, speculate on these matters. It is sufficient to say that apportionment should have been directed according to values and there is no finding as to what those values are. This error does not render it necessary to reverse the judgment (under which we are informed a sale has already been had) and to direct a new trial. The rights of the parties will be sufficiently protected by modifying the judgments of the Appellate Division and of the Special Term so as to direct that a reference be had to ascertain and determine the relative values of the land of Wilson Hogg and of Agnes Hogg, and that upon the coming in and confirmation of the report of the referee the proceeds of sale be apportioned according to such value. The appellant should recover his costs in this court.

Gray, Bartlett, Haight, Vann and Werner, JJ., concur; O'Brien, J., absent.

Judgment accordingly.